UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

JUAN MIGUEL RODRIGUEZ LIMA                    CIVIL ACTION NO. 26-0911

                                              SECTION P

VS.

                                              JUDGE TERRY A. DOUGHTY

WARDEN PINE PRAIRIE ICE                       MAG. JUDGE KAYLA D. MCCLUSKY
PROCESSING CENTER, ET AL.

## REPORT AND RECOMMENDATION

Petitioner Juan Miguel Rodriguez Lima,[1] a detainee in the custody of the Department of

Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"),

petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2]   Respondents oppose the petition.

[doc. # 15].  For reasons below, the Court should deny the petition.

## Background

Petitioner is a citizen of Cuba.  [doc. # 1-1, p. 1].  He entered the United States of

America in 2016.  [doc. # 1-1, p. 2].  On April 8 or 9, 2016, DHS paroled him into the country

for two years to pursue adjustment of status.  [doc. #s 1-3, p. 5; 15-4, p. 1].  On approximately

June 10, 2017, before his parole expired, Petitioner departed the United States and then re-

entered "at or near Miami, Florida and knowingly encouraged, induced, assisted, abetted, or

aided undocumented aliens to enter or try to enter the United States."  [doc. # 15-4, p. 1].  He

---

[1] Petitioner's "A Number" is 208-899-068.

[2] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636, and the standing orders of the Court.

"was charged with violations of sections 212(a)(6)(E)(i) and 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA)." *Id.*

On June 29, 2017, an immigration judge ordered Petitioner removed from the United States to Cuba. [doc. #s 1-3, p. 8; 15-1, p. 1]. Petitioner and the Government waived appeal. [doc. # 15-4, p. 1]. Later in 2017, DHS released Petitioner under an order of supervision. [doc. #s 1-1, p. 2; 1-3, pp. 8-9].

Petitioner was convicted of at least one of the charges described above, he served his sentence, and he was released in July 2025. [doc. # 1, p. 6]. He does not have any pending criminal charges, warrants, or ongoing criminal cases. [doc. # 1-1, p. 1]. ICE re-detained him on December 20, 2025, while he was fishing. [doc. #s 1, p. 4; 1-1, p. 1].

On December 27, 2025, DHS revoked Petitioner's Order of Supervision. [doc. #s 15, p. 1; 15-2, p. 1].

On January 10, 2026, ICE informed Petitioner that it intended to remove him to Mexico. [doc. # 15-2, p. 2].

Petitioner filed this proceeding on March 8, 2026. [doc. # 1, p. 8]. He first claims that ICE re-detained him without providing an individualized custody hearing. *Id.* at 6.

Petitioner claims next that he has endured prolonged post-removal detention and that his removal is not reasonably foreseeable. [doc. # 1, p. 6].

Finally, Petitioner claims that he is not receiving adequate medical care in detention. [doc. # 1, p. 6].

According to Respondents, "On or about April 30, 2026, Petitioner was scheduled for removal to Mexico. [] He was unable to be removed at that time and was transferred from the Pine Prairie Processing Center to Krome North Service Processing Center." [doc. # 15, p. 2].

Respondents opposed the petition on May 12, 2026.  [doc. # 15].  Petitioner filed a reply on May 28, 2026.  [doc. # 18].

## **Jurisdiction**

Under 28 U.S.C. § 2241(c)(3), the Court has federal subject-matter jurisdiction over habeas petitions filed by aliens claiming they are being detained "in violation of the Constitution or laws or treaties of the United States."  *See Zadvydas*, 533 U.S. at 687.  The 'REAL ID Act' of 2005 divests federal courts of jurisdiction over several categories of immigration proceedings.  *See* Pub. L. No. 109-13, Div. B, 119 Stat. 231 (2005).  District courts may not review challenges to final orders of removal.  8 U.S.C. § 1252(a)(5); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007).  And no federal court may review any action that is committed to the discretion of the Attorney General or the DHS Secretary, 8 U.S.C. § 1252(a)(2)(B)(ii), including decisions "regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole,"  8 U.S.C. § 1226(e).

The Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and "challenges to the statutory framework that permits [an] alien's detention without bail"—which remain cognizable under the habeas statute.  *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018) (internal alterations omitted) (citing *Demore v. Kim*, 538 U.S. 510, 516 (2003)); *see Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While§ 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

Despite any statutory limitations on judicial review, federal courts retain "jurisdiction to review [an alien's] detention insofar as that detention presents constitutional issues,"  *Oyelude v.*

3

*Chertoff*, 125 F. App'x 543, 546 (5th Cir. 2005), such as "questions of law regarding the AG's statutory authority or the regulatory framework" governing immigration detention, *Garza-Garcia v. Moore*, 539 F. Supp. 2d 899, 903 (S.D. Tex. 2007); *see also Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[E]ven after the passage of the REAL ID Act, district courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241 when those claims do not challenge a final order of removal, but instead challenge the detention itself.").

Here, this Court enjoys jurisdiction over Petitioner's constitutional claims.

## Law and Analysis

### I. Prolonged Detention

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to

believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3]  If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

   "[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

   Here, Petitioner has not been in custody beyond the presumptively reasonable six-month period.  ICE re-detained him on December 20, 2025.  [doc. #s 1, p. 4; 1-1, p. 1].  Six months after December 20, 2025, is June 20, 2026.

   Petitioner suggests that the relevant 6-month period began on June 29, 2017, when his removal order became final.  [doc. # 18, p. 2].  However, Petitioner was released on an unknown date after June 29, 2017.   From 2017 until December 20, 2025, he was not detained.  In *Zadvydas*, the Court stated that Congress "doubted the constitutionality of *detention* for more than six months." *Id* (emphases added).  The Court added that this 6-month period of detention is the "recognize[d]" period. *Id.*; *see Chance v. Napolitano*, 453 F. App'x 535 (5th Cir. 2011) (per curiam) (concluding that the district court did not err in finding that the "challenge to [petitioner's] continued post removal detention was premature" when petitioner "had not been in

---

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

post-removal-order detention longer than the presumptively reasonable six-month period" authorized by *Zadvydas*); *Okpoju v. Ridge*, 115 F. App'x 302 (5th Cir. 2004) (per curiam) (finding that a continued detention claim was "premature" because petitioner "had not yet been in custody longer than the presumptively reasonable six-month post removal order period"), *cert. denied*, 544 U.S. 1066 (2005); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011).

Even if Petitioner's claim was not premature, he does not meet his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.  Stripped of his formulaic assertions that removal is not reasonably foreseeable, Petitioner pleads only that he is a "Cuban national[,]" that courts "throughout the country have repeatedly recognized the practical difficulties associated with removals to Cuba," and that the Government "had many years to effectuate [his] removal but has failed to do so."  [doc. #s 1, p. 6; 18, pp. 1-2].

That Petitioner is from Cuba and that other, unidentified courts have allegedly recognized that at unspecified times in the past there were difficulties in removing individuals to Cuba does not constitute "good reason" to believe that there is no significant likelihood of Petitioner's removal.  The same result obtains as to Petitioner's contention that the Government did not remove him for "many years."  From 2017 to December 20, 2025, Petitioner was not detained. There is no indication that DHS attempted to remove Petitioner during this period.  In fact, on unknown dates during this period, Petitioner was serving a criminal sentence.  Thus, Petitioner does not show that the Government was ever unable to remove to Cuba.  That he was not removed before the Government re-detained him on December 20, 2025, bears little, if any, relevance to the question at bar: whether, following his current immigration detention, he provides *good reason* to believe that there is *no* significant likelihood of his removal in the

6

reasonably foreseeable future.[4]  Moreover, Petitioner has not been detained for an extended and excessive duration.

The Court should dismiss this claim without prejudice to Petitioner's right to raise the claim again (i) when it is ripe and (ii) if he can provide good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future.

## II. Bond Hearing

Petitioner claims that he has not received an individualized custody hearing.

Petitioner is not entitled to a bond hearing.  He has a final order of removal.  When he "became subject to an administratively final removal order," "authority for [his] detention then shifted to 8 U.S.C. Section 1231." *Vetcher v. Barr*, 809 F. App'x 254, 256 (5th Cir. 2020).  Under Section 1231, the Government is authorized to detain "noncitizens who have been ordered removed from the United States." *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 575 (2022). "During the removal period"—i.e., after "an alien is ordered removed"—"detention is mandatory" for ninety days. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

Following the ninety-day mandatory detention period, "An alien ordered removed who is inadmissible under section 1182 . . . may be detained beyond the removal period . . . ." 8 U.S.C. § 1231(a)(6).  Section 1231(a)(6), "does not" require "the Government to offer detained noncitizens bond hearings after six months of detention . . . ." *Johnson*, 596 U.S. at 575; *see*

---

[4] *See Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006) (aliens must present sufficient evidence establishing that there is no significant likelihood of removal in the reasonably foreseeable future and not merely offer conclusory statements); *Ropati v. Lynch*, No. 6:17-CV-0219, 2017 WL 5560656, at *2 (W.D. La. Apr. 18, 2017), *report and recommendation adopted,* No. 6:17-CV-00219, 2017 WL 5614942 (W.D. La. Nov. 16, 2017).

*Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) ("§ 1231, unlike § 1226, does not entitle an alien to a bond hearing before an IJ.").

Further, with respect to due process, *Zadvydas* addressed the extent to which due process demands relief in the § 1231(a) setting, concluding that relief is required only when continued detention is unreasonable.  Consequently, the Government has not and is not violating Petitioner's right to due process.  *See Hernandez-Esquivel v. Castro*, 2018 WL 3097029, at *8-9 (W.D. Tex. June 22, 2018); *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020) ("The Supreme Court has had occasion to consider the constitutional implications of indefinite detention under § 1231(a). . . . [T]he Court offered us a standard through which to judge indefinite-detention cases—the *Zadvydas* standard we applied in this case.  We see no cause to question the wisdom of that decision."); *Castaneda*, 95 F. 4th at 760 ("[A] § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation.").[5]

The Court should dismiss this claim.

## III. Medical Care

Petitioner claims that he is not receiving adequate medical care in detention.

"Simply stated, habeas is not available to review questions unrelated to the cause of detention.  Its sole function is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose.  While it is correctly alluded to as the Great Writ,

---

[5] *See also Linares v. Collins*, 2025 WL 2726549, at *5 (W.D. Tex. Aug. 12, 2025), *report and recommendation adopted,* 2025 WL 2726067 (W.D. Tex. Sept. 24, 2025) ("[T]he Supreme Court [in *Zadvydas*] set out the standard for when detention pursuant to § 1231(a)(6) violates due process: when there is no significant likelihood of removal in the reasonably foreseeable future. Use of this standard is also consistent with the practice of other district courts in the Fifth Circuit.") (citing cases).

it cannot be utilized as . . . a springboard to adjudicate matters foreign to the question of the legality of custody." *Pierre v. United States*, 525 F.2d 933, 935-36 (5th Cir. 1976).

"Allegations that challenge the fact or duration of confinement are properly brought in habeas petitions, while allegations that challenge rules, customs, and procedures affecting conditions of confinement are properly brought in civil rights actions." *Schipke v. Van Buren*, 239 F. App'x 85, 85–86 (5th Cir. 2007). Likewise, challenges concerning medical care are not cognizable here. *See Mora v. Warden, Fed. Corr. Complex, Yazoo City Medium*, 480 F. App'x 779, 780 (5th Cir. 2012) (affirming dismissal of a 2241 petition as "not cognizable" because it related to the petitioner's "medical needs, and a determination in his favor would not result in his accelerated release"); *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009) ("[T]he district court found it could not grant her relief pursuant to Section 2241 because her application was 'not in reference to the imposed sentence—but for medical needs.' We agree."); *McBarron v. Jeter*, 243 F. App'x 857, 857 (5th Cir. 2007); *Watson v. Briscoe*, 554 F.2d 650, 652 (5th Cir. 1977).

Petitioner's claim is plainly unrelated to the cause of his detention. The Court should dismiss it.[6]

**Conclusion**

For the reasons above, **IT IS RECOMMENDED** that Petitioner Juan Miguel Rodriguez Lima's *Zadvydas* claim be **DISMISSED WITHOUT PREJUDICE** to Petitioner's right to re-

---

[6] If Petitioner desires to pursue a civil rights action, he must file a separate proceeding, using the appropriate complaint form. Petitioner should be aware that to file a separate civil rights proceeding, he must either pay the required filing fee or submit a properly executed application to proceed in forma pauperis. Petitioner is advised that the cost of litigating a civil rights complaint under Section 1983 is significantly higher than the cost of litigating a habeas corpus petition. Petitioner should likewise be aware that he must exhaust all available administrative remedies before pursuing relief in this Court for his claim concerning his medical care.

urge the claim if he has good reason to believe, in light of any changes in circumstance or new evidence, that his removal is not significantly likely in the reasonably foreseeable future.

**IT IS FURTHER RECOMMENDED** that Petitioner's claim concerning his medical care be **DISMISSED WITH PREJUDICE** here but **WITHOUT PREJUDICE** to his right to raise the claim in a separate civil rights action.

**IT IS FURTHER RECOMMENDED** that Petitioner's remaining claim be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 4th day of June, 2026.

_____
Kayla Dye McClusky
United States Magistrate Judge